IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HUGHES TECHNICAL SERVICES, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>GLOBAL CONSULTING AND<br>MECHANICAL SERVICES, LLC,<br><br>*Defendant.* | Case No. 2:21-CV-0156-RSP |

## MEMORANDUM ORDER

Before the Court is the Motion to Dismiss Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Plaintiff/Counter-Defendant Hughes Technical Services, LLC ("Hughes"). Dkt. No. 19. In its motion, Hughes seeks to dismiss the counterclaims being asserted by the Defendant/Counter-Plaintiff Global Consulting and Mechanical Services, LLC ("Global") in Global's Answer and Counterclaims (Dkt. No. 7). Having considered the briefing, the Court **GRANTS IN PART** Hughes' motion (Dkt. No. 19).

I.   Background

On May 5, 2021, Hughes filed the present suit against Global. Dkt. No. 1. On June 11, 2021, Global filed its Answer which asserted the following counterclaims: Breach of Contract, Tortious Interference with Contract, and Conspiracy. Dkt. No. 7.

Beginning with the Breach of Contract counterclaim, Global alleges that it and Hughes entered into an agreement related to maintenance, repair, inspection, and outage services for gas turbines used for power generation (the "Teaming Agreement"). Dkt. No. 7-1. In the Answer, Global alleges that Hughes breached this agreement by violating certain exclusivity provisions in the Teaming Agreement and by hiring William J. Austin, a Global officer. Dkt. No. 7 at ¶58a-e.

The Teaming Agreement, among other clauses, contains a limitation of liability clause, Dkt. No. 7-1 at ¶ 11, which states in all capital letters:

> NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES, OR LOSS OF OR FAILURE TO OBTAIN ANY BUSINESS OPPORTUNITY HOWEVER CAUSED, WHETHER FOUNDED ON CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR OTHERWISE

Additionally, the Teaming Agreement is governed by Georgia state law. Dkt. No. at 7-1 at ¶ 12.5.

For the Tortious Interference and Conspiracy counterclaims, Global alleges that Hughes and Global interfered or conspired to interfere with Global's contracts. Dkt. No. 7 at ¶¶ 62-71.

## II.   Legal Standard

### a.   12(b)(6) Standard

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Court can dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Hunter v. Berkshire Hathaway, Incorp.*, 826 F.3d 357, 361 (5th Cir. 2016) (internal quotation marks omitted).

### b.   Choice of Law

"To determine the applicable law, a federal court sitting in diversity applies the choice of law rules of the forum." *Spence v. Glock, GmbH*, 227 F.3d 308, 311 (5th Cir. 2000); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Texas applies the "party

autonomy rule" when determining whether to enforce a choice of law clause in a contract: "When a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." *DeSantis v. Wackenhut Co.*, 793 S.W.2d 670, 677 (Tex. 1990).

Here, the choice of law clause designates Georgia law as governing the Teaming Agreement. Dkt. No. 7-1 at ¶ 12.5. As to the enforceability of the limitation of liability clause, "Georgia law recognizes that unless prohibited by statute or public policy, the parties are free to contract on any terms and about any subject matter in which they have an interest, and such agreements will be enforced by the courts." *Grand Master Contracting, L.L.C. v. Lincoln Apartment Management Ltd. Partnership et al.*, 724 S.E.2d 456, 458 (Ga. 2012); *see also Doty Comm.'s, Inc. v. L.M. Berry & Co.*, 417 F.Supp.2d 1355, 1359 (N.D. Ga. 2006) ("limitations of liability clauses . . . are enforceable under Georgia law unless the defendants' conduct gives rise to a tort claim for gross negligence or wanton or willful conduct.").[1]

### III.  Analysis

Hughes moves to dismiss Global's counterclaims on three alternative grounds. Hughes argues that (1) the Limitation of Liability Clause contained in the Teaming Agreement bars Global's counterclaims; (2) the Confidential Information Agreement, which was part of the Teaming Agreement, bars the Global's counterclaims; and (3) the Economic Loss Rule bars Global's Tortious Interference and Conspiracy counterclaims.

---

[1] The Court will apply Georgia contract law when determining the enforceability of the limitation of liability clause in the Teaming Agreement because neither party challenges the enforceability of the clause. Furthermore, for the purposes of enforcing a limitation of liability clause, both Georgia and Texas law generally enforce these clauses. *Cf. Doty Comm.'s supra* with *Bombardier Aerospace Co. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 231 (Tex. 2019) ("Limitation-of-liability clauses, however, are generally valid and enforceable.").

### a. Breach of Contract counterclaim

Beginning with the Breach of Contract counterclaim, Hughes argues that "the limitation of liability clause of the Teaming Agreement specifically precludes Global's breach of contract counterclaim because both Global and Hughes waived their right to collect any damages, including damages for lost business opportunity." Dkt. No. 19 at 10. In response, Global only argues that Hughes is estopped from asserting that Global's counterclaims are barred by the Teaming Agreement. Dkt. No. 21 at 3-4.

Citing judicial estoppel, Global argues that Hughes in a related case[2] previously pending in the Eastern District of Pennsylvania ("Pennsylvania Action") "took the position . . . that the identical claims it asserts here are based on the same Teaming Agreement." *Id.* at 3. Further, according to Global, "Hughes represented . . . that its damages were recoverable under the Teaming Agreement." *Id.* Thus, Global argues that Hughes' position in this case is inconsistent with its previous position, and therefore, Hughes should be judicially estopped from arguing that Global's counterclaims are barred under the Teaming Agreement. *Id.* at 4.

The Court finds that Hughes is not judicially estopped because the elements of judicial estoppel are not met. In determining whether judicial estoppel applies, courts in the Fifth Circuit must find three elements: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (quoting *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (*en banc*)).

---

[2] *Hughes Technical Services, LLC v. Global Consulting & Mechanical Services, LLC*, Case No. 5:20-cv-03885, (E.D. Pa.).

Global provides no arguments or evidence[3] to show that the second element—Hughes' prior position was acted on in the Pennsylvania Action—or the third element—Hughes did not act inadvertently—are met. As to the first element, Hughes did not assert in the Pennsylvania Action that the Teaming Agreement barred any type of damages between Hughes and Global. Hughes referenced the Teaming Agreement to demonstrate that the parties had a contractual relationship, which could support a finding of personal jurisdiction over Global in the Pennsylvania Action.. *See, e.g.*, Dkt. No. 22-1 at 11. Therefore, Hughes cannot take an inconsistent position here when it did not take a position on the issue in the prior action.

Because Hughes is not judicially estopped and Global does not make any other arguments concerning the enforceability of the limitation of liability clause, the Court finds that the clause is enforceable and bars Global from asserting its Breach of Contract counterclaim. The clause states that "neither party shall be liable to the other for any . . . damages, or loss of or failure to obtain any business opportunity however caused, whether founded on contract . . . ." Dkt. No. 7-1 at Art. 11. Global's Breach of Contract claim falls within the scope of this provision because it is clearly founded on contract. Therefore, the Court **DISMISSES WITH PREJUDICE** Global's Breach of Contract claim. Dkt. No. 7 at ¶¶ 58-61.

b. **Tortious Interference and Conspiracy counterclaims**

Hughes argues these claims should be dismissed because they are also barred by the limitation of liability clause or, alternatively, they are barred by the Economic Loss Rule. Additionally, Hughes argues that the allegations in the complaint supporting these claims are conclusory. Dkt. No. 19 at 11.

---

[3] Global asks the Court to take judicial notice of the Pennsylvania Action. Dkt. No. 21 at 3, n. 1. Under Federal Rules of Evidence, "the court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Here, the Court declines to take judicial notice because Global, not only references a case outside the Court's territorial jurisdiction, but it also asks the Court to take notice of information within the Pennsylvania record that is subject to reasonable dispute.

The Court agrees with Hughes' latter argument and finds that the complaint fails to plead facts that make Global's Tortious Interference claim plausible. Under Texas law, "the elements of tortious interference with a contract are (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *McGehee v. Hagan*, 367 S.W.3d 848, 855 (Tex.App.-Houston 2012) (citing *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). "To prevail on a tortious-interference claim, a plaintiff must present evidence that the defendant interfered with a specific contract." *McGehee*, 367 S.W.3d at 855 (citing *Finlan v. Dallas Indep. Sch. Dist.*, 90 S.W.3d 395, 412 (Tex.App.-Eastland 2002, pet. denied)).

Here, Global's allegations are deficient. Beginning with the first element, it is not clear which agreement was subject to Hughes' interference. The Answer makes references to a "Company Agreement" between Mr. Austin and Global, Dkt. No. 7 at ¶ 62, and the Answer references "contractual relations with Gulf Power, Vistra, Saavi, and others." *Id.* at ¶ 66. These general allegations fail to identify a specific contract.

Moving to the next element, Global does not allege a willful and intentional act of interference by Hughes. Instead, Global alleges Hughes "began tortiously interfering." *Id.* at ¶ 62. These allegations are conclusory. Finally, Global does not allege actual damages or losses; instead, Global generally alleges that it "suffered damages in excess of the minimum jurisdictional limits of this Court." *Id.* at ¶ 67. Thus, Global's allegations fail to state a claim of tortious interference that is plausible. Therefore, the Court **DISMISSES WITHOUT PREJUDICE** Global's Tortious Interference claim. Dkt. No. 7 at ¶¶ 62-67.

For Global's Conspiracy claim, its allegations are also deficient. The elements of conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as

a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). The most glaring deficiency is Global's failure to allege any facts concerning a meeting of the minds on the object or course of action. Furthermore, Global again only alleges that it "has suffered damages in excess of the minimum jurisdictional limits of this Court." Dkt. No. 7 at ¶ 71. Therefore, the Court **DISMISSES WITHOUT PREJUDICE** Global's Conspiracy claim. Dkt. No. 7 at ¶¶ 68-71.

Because the Court has dismissed Global's Tortious Interference and Conspiracy Claims, the Court does not address whether the limitation of liability clause, the Confidential Information Agreement, or the Economic Loss Rule bars Global's counterclaims.

### IV. Conclusion

The Court dismisses each of Global's counterclaims. As to the Breach of Contract claim, the Court **DISMISSES WITH PREJUDICE** this claim because the claim is barred by the limitation of liability clause of the Teaming Agreement. As to the Tortious Interference and Conspiracy claims, the Court **DISMISSES WITHOUT PREJUDICE** these claims, but the Court **GRANTS** Global leave to amend its Tortious Interference and Conspiracy counterclaims. It is therefore **ORDERED** that Global has 14 days from the date of this Order to file any amended pleading.

**SIGNED this 15th day of March, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE